# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| RONNIE CANNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:09-cv-00080 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 20. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 22.

For the reasons stated below, the undersigned recommends that this case be REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on May 23, 2006, alleging that he had been disabled since February 16, 2006, due to a broken back, thoracic degenerative disc disease,

1

depression, and pain spreading from his back to his legs. Docket No. 18, Attachment ("TR"), TR 14, 89-93, 94-96, 132-135. Plaintiff's applications were denied both initially (TR 61, 62) and upon reconsideration (TR 64, 66). Plaintiff subsequently requested (TR 79) and received (TR 46-57) a hearing. Plaintiff's hearing was conducted on November 24, 2008, by Administrative Law Judge ("ALJ") Barbara Kimmelman. TR 19-44. Plaintiff and vocational expert ("VE"), Kenneth Anchor, appeared and testified. *Id.*

On January 16, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-18. Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has L1 compression fracture and thoracic degenerative disc disease, which are found to be a "severe" combination of impairments, but not severe enough, either singly or in combination, to meet or medically equal the requirements set forth in the Listing of Impairments. Appendix I to Subpart p, Regulations No. 4.

3. After consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform a range of sedentary work; lift and carry ten pounds; stand and walk two hours in an eight-hour workday (one hour uninterrupted); sit six hours in an eight-hour workday (30 minutes uninterrupted); with occasional ability to push and pull with the bilateral upper and lower extremities; and requires occasional use of a cane to ambulate.

4. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

5. The claimant was 42 years old at the alleged onset date, described as a younger individual (20 CFR 404.1563 and

416.963).

6. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

7. Transferability of job skills is not material to this decision as the claimant is found "not disabled," (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

9. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 14-18.

On March 2, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 5. On September 16, 2009, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

## A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

6

nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) failing to provide good reasons for rejecting the opinions of treating orthopedist Dr. Jeffrey Adams; (2) failing to find that Plaintiff is disabled because of pain; and (3) finding that Plaintiff could essentially perform the full range of sedentary work, as this finding is not supported by substantial evidence.  Docket No. 21.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

### 1. The ALJ's Evaluation of the Opinion of Dr. Adams

Plaintiff argues that the ALJ erred in failing to provide good reasons for rejecting the

opinions of treating orthopedist Dr. Jeffrey Adams regarding Plaintiff's sitting limitations. Docket No. 21. Specifically, Plaintiff argues that Dr. Adams, who provided "the only credible medical opinion" in the record, opined that Plaintiff could sit for only four hours in an eight-hour workday, which does not meet the requirements of sedentary work as defined by SSR 83-10. *Id.*

Defendant responds that the ALJ properly weighed the opinions of Dr. Adams and explained why she rejected Dr. Adams' opinions of Plaintiff's sitting limitations. Docket No. 22. Specifically, Defendant argues that "the ALJ discussed plaintiff's activities of daily living . . . which undermined Dr. Adams' [*sic*] restrictions"; "[t]he ALJ . . . noted that plaintiff's doctor advised him to walk a mile each day"; and "the ALJ pointed out that Dr. Adams had not examined plaintiff for two years at the time of his assessments of plaintiff's ability to do work." *Id.*

Dr. Adams treated Plaintiff from February 15, 2006 until June 11, 2007. TR 179-188, 197-201, 208. On May 7, 2008 and October 13, 2008, without examining Plaintiff, Dr. Adams completed medical source statements regarding Plaintiff's physical ability to do work-related activities. TR 193-196, 202-207. In the first of these statements, Dr. Adams indicated that Plaintiff was capable of sitting for "less than about 6 hours in an 8-hour workday."[2] TR 194. In the second statement, Dr. Adams indicated that Plaintiff was capable of sitting for four hours in an eight-hour workday. TR 203.

The ALJ found that Plaintiff had "the residual functional capacity to perform a range of

---

[2] In this medical source statement, Dr. Adams marked the box next to "less than about 6 hours in an 8-hour workday," indicating "how many hours total (with normal breaks) . . . the individual [can] sit." TR 194. The undersigned notes that there was not a more restrictive option available on this particular form; the box Dr. Adams marked was the lowest number of hours he could have selected on this form.

sedentary work" and the ability to "sit six hours in an eight-hour workday (30 minutes uninterrupted)." TR 14.  Explaining her consideration of Dr. Adams' opinions, the ALJ stated, "Dr. Adams' assessment is credited to the extent that it is supported by the evidence and in that the claimant is limited to a range of sedentary work activity."  TR 15-16.  The ALJ further explained, "Although [Dr. Adams] had not seen the claimant recently, he determined the claimant could perform sedentary work during two different assessments, since these opinions appeared consistent with the medical evidence as a whole, as well as the claimant's admitted activities, these combined determinations are given significant weight."  TR 16.

The undersigned cannot determine, based on the ALJ's statements regarding Dr. Adams' opinions, whether the ALJ adequately considered the evidence in the record so as to make an accurate and clear determination about Plaintiff's residual functional capacity.  Specifically, the ALJ stated that Dr. Adams "determined the claimant could perform sedentary work during two different assessments."[3]  TR 16.  SSR 83-10 explains the sitting limitations for sedentary work: "at the sedentary level of exertion, periods of . . . sitting should generally total approximately 6 hours out of an 8-hour workday."  SSR No. 83-10 (Cum. Ed. 1983).  As previously noted, Dr. Adams opined on May 7, 2008 that Plaintiff could sit for less than about six hours in an eight-hour workday, and on October 13, 2008 that Plaintiff could sit for four hours in an eight-hour workday.  TR 194, 203.  Dr. Adams' opinions of Plaintiff's sitting limitations do not meet the

---

[3] The undersigned recognizes the possibility that in stating that "[Dr. Adams] determined the claimant could perform sedentary work," (TR 16) the ALJ meant that Dr. Adams's opinions were consistent with Plaintiff's ability to perform a limited range of sedentary work, as opposed to the full range of sedentary work.  Since the ALJ does not qualify her description of Dr. Adams's opinion in this way, however, the undersigned cannot determine if she adequately considered this evidence as to make an accurate and clear determination about Plaintiff's residual functional capacity.

requirements of sedentary work as defined by SSR 83-10, and contrary to the ALJ's assertion, Dr. Adams did not "determine[] the claimant could perform sedentary work during two different assessments."

Moreover, although the ALJ accorded "significant weight" to Dr. Adams' opinions, found Plaintiff's hearing testimony to be credible, and found that objective testing revealed a compression fracture with a significant amount of callus formation, she ultimately (and without explanation) determined that Plaintiff had a less restrictive sitting limitation than did Dr. Adams.

Defendant offers several explanations for the discrepancy between ALJ's finding regarding Plaintiff's sitting limitations and Dr. Adams' finding regarding Plaintiff's sitting limitations. Docket No. 22. Specifically, Defendant notes that "the ALJ discussed plaintiff's activities of daily living . . . which undermined Dr. Adam's [*sic*] restrictions." *Id.* While the ALJ did note that Plaintiff testified that he was able to feed his children and get them off to school, "piddle" around the yard, help his step-father by handing him wrenches, pick up trash (but not cut the grass), wash dishes some, put laundry in the washing machine (but not take the clothes out), lift five pounds, stand one hour at a time, walk one hour at a time, and sit thirty minutes at a time (TR 16, 25-29, 33, 38), these activities do not undermine Dr. Adams' restrictions on Plaintiff's sitting abilities, as most of these activities, as Plaintiff described them, involve standing or walking, not sitting. Specifically, Plaintiff testified that sending his children to school in the morning involves "getting them something to eat and making sure they get on the bus" (TR 25), helping his step-father involves walking around the garage and handing him wrenches (TR 26-27) and putting laundry in the washing machine involves gathering up clothes and putting them in the washing machine (TR 28).

Defendant also argues that "the ALJ rejected portions of Dr. Adams' opinions because . . . the doctor had not examined Plaintiff in over two years at the time the opinions were rendered." Docket No. 22. Defendant's assertion (shared by the ALJ) that Dr. Adams had not examined Plaintiff in over two years when he opined regarding Plaintiff's sitting limitations is incorrect. Contrary to the ALJ's statement that "Dr. Adams never saw the claimant after December 2006," the record reflects that Dr. Adams examined Plaintiff on June 11, 2007. TR 15, 208. Dr. Adams issued the opinions in question in medical source statements completed on May 7, 2008, and October 13, 2008, approximately eleven and sixteen months after he last examined Plaintiff. TR 193-196, 202-207. Furthermore, Defendant does not explain how the fact that Dr. Adams had not examined Plaintiff in some time when he completed these assessments would affect the weight these assessments should be accorded, especially given the fact that Dr. Adams was a treating specialist whose opinion was supported by the record and was uncontradicted.

Finally, the uncontradicted opinion of a treating physician is entitled to complete deference. *Cohen v. Secretary*, 964 F.2d 316, 320 (6th Cir. 1987). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). There is no medical evidence in the record (from a treating specialist or otherwise) that contradicts Dr. Adams' opinions regarding Plaintiff's sitting limitations. The only other evidence in the record from medical sources is a January 6, 2007 "Report of Contact" from Dr. James Lester, and an August 4, 2006 medical consultant analysis

from DDS physician Dr. Michael Ryan.[4] TR 156, 189-192. Neither of these reports contradicts Dr. Adams' opinions regarding Plaintiff's sitting limitations. *Compare* TR 156, 189-192 *with* TR 193-196, 202-207. Accordingly, Dr. Adams' opinions should be given controlling weight.

Moreover, the ALJ's opinion contains assertions that are inconsistent with record. Specifically, the record does not support the ALJ's statements that "[Dr. Adams] determined the claimant could perform sedentary work," and that "Dr. Adams never saw the claimant after December 2006." TR 15, 16. As has been discussed above, Dr. Adams did not determine that Plaintiff could perform sedentary work; in fact, his opinions regarding Plaintiff's sitting abilities do not meet the requirements for sedentary work. Additionally, as has been discussed above, the ALJ is simply incorrect in her statement that Dr. Adams never saw Plaintiff after December 2006, as the record indicates that Dr. Adams saw Plaintiff on June 11, 2007.

Furthermore, it is unclear how the ALJ arrived at the conclusion that Plaintiff could sit for six hours in an eight-hour workday. It is unclear if ALJ relied on Plaintiff's daily activities in rejecting Dr. Adams' opinions of Plaintiff's sitting limitations, as Defendant contends that she did. Even if the ALJ did rely on Plaintiff's daily activities in making her finding regarding Plaintiff's sitting limitations, it is unclear how Plaintiff's daily activities could serve as substantial evidence to support this finding, as Plaintiff's daily activities are not inconsistent with Dr. Adams' opinion regarding Plaintiff's sitting limitation. In light of these inconsistencies and ambiguities in the ALJ's opinion, the undersigned cannot determine with certainty that the ALJ adequately considered the evidence in the record so as to make an accurate and clear

---

[4] The ALJ accorded "little weight" to Dr. Ryan's report because Dr. Ryan opined that Plaintiff's impairment should no longer be severe by February 2007, but "medical evidence received at the hearing level shows the claimant's impairment has indeed continued." TR 16.

determination about Plaintiff's residual functional capacity. The undersigned, therefore, recommends that this action be remanded. Because the undersigned recommends that this action be remanded, the undersigned will not address Plaintiff's additional statements of errors.

### IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that this action be REMANDED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

 

_____
E. CLIFTON KNOWLES
United States Magistrate Judge